## Flora G. Hanney *v.* Guy B. Clark.

Maltbie, C. J., Hinman, Avery, Brown and Jennings, Js.

Argued January 4th—decided April 8th, 1938.

*Samuel M. Gruskin,* with whom was *George C. Morgan,* for the appellant (plaintiff).

*Henry L. McGuire,* with whom was *Harry C. Brogan,* for the appellee (defendant).

AVERY, J.   The plaintiff brought this action claiming in her complaint that on May 7th, 1930, her mother, Josephine W. Gadbois, late of East Lyme, conveyed to the defendant a farm in that town without consideration and upon the understanding and agreement that the title conveyed should be held by him in trust for the benefit of the plaintiff; that she had demanded that the defendant transfer title to her and that he had refused and neglected to do so.   At the trial, the plaintiff introduced evidence of statements made by Mrs. Gadbois at or about the time the deed was made, and also statements made by the defendant at or about that time and subsequently, to the effect that the deed was given by Mrs. Gadbois to the defendant in trust to reconvey the property to the plaintiff.   These statements were admitted by agreement of counsel on both sides, subject to objection and a later ruling by the court.   After the close of the trial the court filed a memorandum of decision excluding the testimony and rendering judgment for the defend-

ant, and the plaintiff has appealed. The vital question on this appeal is whether there was sufficient evidence of part performance of an oral contract to take the case out of the Statute of Frauds and permit evidence to be offered as to the terms of the oral contract.

In her appeal the plaintiff has asked certain additions to the finding but the finding itself is not attacked, and discloses these pertinent facts: On November 1st, 1929, Josephine Gadbois, mother of the plaintiff, owned a farm in East Lyme of eighty acres with a wood lot known as the Cold Spring Lot of twenty acres. There was a homestead, a seven-room cottage and a few small barns upon the property and Mrs. Gadbois lived in the homestead with the plaintiff and the plaintiff's husband. About November 1st, 1929, the defendant, who was in the saw mill business, purchased from Mrs. Gadbois the timber on the Cold Spring Lot for $550. At that time there was an attachment upon the entire property in the amount of $6000, in an action for wages brought by Mrs. Gadbois' son. The defendant subsequently became very friendly with Mrs. Gadbois and made frequent visits to her house until her death. About January 27th, 1930, the Cold Spring Lot was sold and the defendant made an arrangement with the attorney for the attaching creditor that the money received for the purchase price might be substituted in place of the attachment and the latter released. Thereafter the defendant requested the town clerk of East Lyme to draw a deed from the plaintiff's mother to him, which was brought by the defendant to Mrs. Gadbois' home and executed there by her in his presence and that of two attesting witnesses. At that time no money passed and nothing was said about payment. The value of the entire property at that time was $6000, disregarding the part which had been sold and the attachment. On the eve-

ning of May 7th, 1930, the town clerk of East Lyme was called to the Gadbois home by Mrs. Gadbois to take the acknowledgment of the deed. The defendant was not present. At the same time the town clerk was requested by Mrs. Gadbois to and did draw a bill of sale of the furniture in the house to the plaintiff. This bill of sale contained the following language: "Household furniture and personal belongings of whatever nature contained in the dwelling house now occupied by me on the highway leading from Flanders to Chesterfield and recently sold by me to Guy B. Clark." The deed from Mrs. Gadbois to the defendant was a quitclaim deed, expressed to be for a valuable consideration, reserving a life estate to the grantor and contained no trust provision.

After execution of the deed the defendant had the use of part of the property with the permission of Mrs. Gadbois; and, in order to keep cattle therein, made small repairs to the barn. Mrs. Gadbois made a will on October 19th, 1930, naming the defendant executor. She died March 27th, 1931. Her will, after making bequests of money aggregating $1500 together with various items of furniture and effects, left all her residuary estate, both real and personal, to the plaintiff. At the time the will was drawn, Mrs. Gadbois had no interest in real estate other than the farm. About December, 1933, the defendant, as executor of Mrs. Gadbois' estate, settled the claim upon which the attachment had been placed upon the property for $100 and charged the amount against Mrs. Gadbois' estate in his accounting. After the death of Mrs. Gadbois the defendant made no use of the property and the plaintiff and her husband continued to reside there paying no rent to the defendant. The plaintiff's husband made repairs to the premises, installing a new boiler and building a brooder, but it did not appear

whether these improvements were made during the lifetime or after the death of Mrs. Gadbois. The defendant paid one year's back taxes and all the taxes and insurance premiums, except that for two years he gave the money to the plaintiff to pay the taxes upon her promise to repay him, which she failed to do. In August, 1930, he paid Mrs. Gadbois $148.85 and in December of the same year $25. On July 17th, 1933, the defendant leased the small cottage to Mildred Orloff, with an option to purchase, and subsequent thereto she secured a judgment against him for specific performance of an agreement to convey the cottage. The plaintiff seeks to have added to the finding that the repairs made by her husband to the property were made after the death of Mrs. Gadbois and that the plaintiff after her mother's death continued to occupy the property under a claim of ownership. Both of these facts were disputed upon the evidence and no addition of the finding is permissible by which the position of the plaintiff would be materially advantaged.

The claim of the plaintiff as stated in the complaint is that she might by parol evidence show that the conveyance was made to the defendant upon an agreement that the land would be held by him in trust for her sole benefit, and the question so presented is whether, where a deed of the fee of land is made, it may be charged with a trust resting in parol. The original Statute of Frauds as enacted in England contained an express provision that all declarations or creations of trust in land should be manifested or proved by some writing. 3 Pomeroy, Equity Jurisprudence (4th Ed.) § 1006. That provision was omitted from our Statute of Frauds, but nevertheless it is a part of our common law from the earliest days that an express trust in real estate may not be proved

by parol; *Dean* v. *Dean,* 6 Conn. 285, 288; *Hayden* v. *Denslow,* 27 Conn. 335, 341; *Brown* v. *Brown,* 56 Conn. 493, 499, 34 Atl. 490; *Wilson* v. *Warner,* 84 Conn. 560, 563, 80 Atl. 718; and this was held to be so in one case although counsel expressly called the court's attention to the omission of the provision concerning trusts from our statute. *Todd* v. *Munson,* 53 Conn. 579, 589, 4 Atl. 99. The plaintiff cannot then prevail unless there are circumstances which make that rule inapplicable, and we necessarily approach that question upon the same basis as though the creation of an express trust was included within the terms of our Statute of Frauds.

We may narrow our discussion considerably if we keep in mind the distinction between cases where land is devised upon an oral promise by the devisee to convey it to another, or the like, and those where the land is conveyed inter vivos upon a similar promise, for there is far stronger authority in the former than in the latter situation for giving effect to the parol trust. Restatement, Trusts, Vol. 1, §§ 45, 55; 3 Bogert, Trusts & Trustees, §§ 495, 499. One of the cases principally relied upon by the plaintiff—*Dowd* v. *Tucker,* 41 Conn. 197—affords no precedent for her claim, because it falls within the former class. The principle applicable in such cases extends to conveyances inter vivos made in contemplation of death; Restatement, Trusts, Vol. 1, § 45; and that was the situation in *Fisk's Appeal,* 81 Conn. 433, 71 Atl. 559. It is true that, in that case, the land in question was located in another State and we held that the law of that State determined whether or not an enforceable trust was created. But that question having been answered in the affirmative, we then considered whether the trust might be proved under our Statute of Frauds in the absence of any allegation of actual fraud and we held that it could,

that fraud was necessarily implied from proof that the conveyance had been made upon a promise of the grantee to hold the title for the benefit of his minor children, and that this fact unexplained showed constructive fraud as matter of law, citing *Dowd* v. *Tucker,* supra.

The first case in our reports dealing with an attempt to prove that a conveyance was made upon an express oral trust was *Dean* v. *Dean,* supra, and it was held that to permit this to be done would be "to counteract the rules of the common law in relation to deeds or other instruments in writing; and also the statute of frauds and perjuries." In that case no question of performance taking the trust out of the principle requiring it to be in writing was presented to the court. In *Crocker* v. *Higgins,* 7 Conn. 342, land was conveyed for less than half its value on condition that the grantee would give a lease to another for his life, and it was held that that other might specifically enforce the agreement for the lease upon the ground that the conveyance of the land to the grantee constituted a performance which would be sufficient in equity to take the case out of the principle requiring trusts in real estate to be created in writing. In *Hayden* v. *Denslow,* 27 Conn. 335, we reached a similar conclusion, stating that (p. 341): "The agreement to reconvey is indeed a contract relating to land, but after a deed is given and received for that purpose the contract is executed on one part, and is by this part execution taken out from the operation of the statute of frauds."

In *Todd* v. *Munson,* supra, the earlier cases to which we have referred were reviewed, and in an action by the person for whose benefit the oral promise was made to enforce it, it was held that parol evidence was not admissible to prove that the land was conveyed upon an express trust, and, although *Crocker* v. *Hig-*

*gins,* supra, was cited to the court, no note was taken in the opinion of the fact that the deed had been actually delivered as constituting performance which would be sufficient to make the agreement enforceable in equity. In *Verzier* v. *Convard,* 75 Conn. 1, 52 Atl. 255, an attempt was made to prove that a warranty deed expressed to be upon a valuable consideration was given upon an oral agreement that upon the death of the grantor the land should be conveyed to the plaintiff. The deed was upon condition that the grantee provide a home and support for the grantor during his life and the action was brought after his death. Again, *Crocker* v. *Higgins,* supra, was cited to the court, but no note was taken of the giving of the deed as constituting performance sufficient to give effect to the trust. The opinion discusses the doctrine that part performance of an oral agreement as to land may be sufficient in equity to make the trust enforceable, but it was held that the conduct of the parties throughout the grantor's life was entirely consistent with the provisions of the deed, and that no basis appeared for the application of the doctrine. In *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 155 Atl. 838, we held that where land was deeded to a grantee upon which he built a house and over which he exercised the usual rights of ownership, an oral agreement that upon the death of the grantee and his wife the land would revert to the grantor, his wife or heirs could not be enforced, and following *Verzier* v. *Convard,* supra, that the construction of the house and the other acts done did not constitute part performance. See also *Reynolds* v. *Reynolds,* 121 Conn. 153, 160, 183 Atl. 394.

This examination of our cases shows that we have been consistent in holding that where the absolute title in land is conveyed, an oral trust as to it may not

be proved unless the case is taken out of the operation of the principle as to parol trusts in land. In the two cases of *Crocker* v. *Higgins,* supra, and *Hayden* v. *Denslow,* supra, we held that the making of the conveyance was sufficient performance to have that effect. In subsequent cases, even where *Crocker* v. *Higgins* was called to the attention of the court and the facts would make the decisions reached in these two cases applicable, the rule they announced has not been applied. The doctrine of part performance has been engrafted upon the Statute of Frauds by equity in order to prevent a law designed to prevent fraud from becoming the very instrument by which fraud is accomplished. 3 Pomeroy, Equity Jurisprudence (4th Ed.) § 1294, p. 3118. Pomeroy thus states the principle upon which the doctrine is founded: " 'If the defendant knowingly permits the plaintiff to do acts in part performance of the verbal agreement, acts done in reliance on the agreement, which change the relations of the parties and prevent a restoration to their former condition, it would be a virtual fraud for the defendant to interpose the statute as a defense, and thus secure for himself the benefit of the acts of part performance, while the plaintiff would be left not only without adequate remedy at law, but also liable for damages as a trespasser.' " 5 Pomeroy, Equitable Jurisprudence (4th Ed.) § 2239, p. 5004; *Santoro* v. *Mack,* 108 Conn. 683, 690, 145 Atl. 273. "In a suit founded upon . . . part performance, the defendant is really 'charged' upon the equities resulting from the acts done in execution of the contract, and not (within the meaning of the statute) upon the contract itself." *Maddison* v. *Alderson,* 8 App. Cas. 467, 475. It follows that the acts of part performance relied on by the plaintiff must be acts done by himself. Browne, Statutes of Fraud (5th Ed.) § 453; 2 Story, Equity

Jurisprudence (14th Ed.) § 1047. Consequently, where one who claims to be beneficiary of an oral trust which he seeks to charge upon land conveyed inter vivos to another, the only acts upon which he can rely as part performance to take the case out of the general principle concerning the creation of parol trusts in land, are his own, and he cannot take advantage of the conveyance by the grantor as constituting such performance. The decisions to the contrary in *Crocker* v. *Higgins* and *Hayden* v. *Denslow,* supra, are unsound in principle and were impliedly overruled by our later decisions.

The only other facts which the plaintiff can seriously urge to take this case out of the Statute of Frauds are her continuance in possession after her mother's death and the improvements made by her husband. In *Andrew* v. *Babcock,* 63 Conn. 109, 120, 26 Atl. 715, we said: "While possession alone of land, under a verbal contract, when delivered to a vendee or lessee with the consent of the vendor or lessor, or with such knowledge as would imply consent, and under such circumstances that it can naturally and reasonably be accounted for only by the supposition of some contract, instead of any other relation between the parties, thus clearly indicating the commencement of a new estate or interest in the land on the part of the possessor, is a sufficient act of part performance to take the case out of the statute, yet the mere physical fact of possession is not sufficient, 'when the possession is not a new fact, but is the continuation of a former similar condition, as when it is by a tenant after the expiration of his term alleging a verbal contract to renew or to convey, the intent' (to carry out and execute the agreement) 'must be proved by some further act which clearly shows that possession must be accounted for by the new relation, and

cannot be referred to the previous holding." See also *Van Epps* v. *Redfield,* 69 Conn. 104, 113, 36 Atl. 1011. As the plaintiff simply continued to reside upon the property after her mother's death in the same manner in which she had resided before, there is nothing in her possession to indicate the commencement of a new estate or interest in the property.

In regard to the repairs made by the plaintiff's husband, as it is not found that they were made after the death of Mrs. Gadbois, no inference of ownership by the plaintiff arises from the making of these repairs and there is no finding as to any specific repairs made by the plaintiff after her mother's death nor any evidence sufficient to support an addition to the finding to that effect. Our rule as to the acts of part performance required to be first shown in order to permit evidence of a parol agreement to be offered, to take a case out of the Statute of Frauds requires "that it must first appear that these acts are of such a character as to be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject-matter in dispute before parol evidence of the terms of the contract becomes admissible." *Harmonie Club, Inc.* v. *Smirnow,* 106 Conn. 243, 247, 137 Atl. 769.

It follows that the trial court was correct in ruling the evidence offered by the plaintiff as to the terms of the agreement inadmissible.

There is no error.

In this opinion the other judges concurred.